IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ARTHUR D'AMARIO, III,                 :
                                      :    HONORABLE JOSEPH E. IRENAS
            Petitioner,               :
                                      :    CIVIL ACTION NO. 04-2221 (JEI)
      v.                              :
                                      :
UNITED STATES OF AMERICA,             :            **OPINION**
                                      :
            Respondent.               :


**APPEARANCES:**

ARTHUR D'AMARIO, Petitioner *pro se*
# 02989-070
Medical Center For Federal Prisoners
P.O. Box 4000
Springfield, MO 65801-4000

CHRISTOPHER J. CHRISTIE, UNITED STATES ATTORNEY
By: Deborah L. Goldklang, Esq.
970 Broad Street, Suite 700
Newark, NJ 07102
      Counsel for Respondent


**IRENAS**, Senior District Judge:

      Presently before the Court is Petitioner's Motion to Vacate,
Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.
Petitioner identifies multiple grounds for granting his motion,
but the "essence of the motion" he maintains, is that he was
denied his Sixth Amendment right to effective assistance of
counsel "at every stage of the case" in violation of *Strickland
v. Washington*, 466 U.S. 668 (1984).  (Petitioner's Memorandum in

1

Support of Motion ("Pet. Mem.") at 1)  He further alleges that any grounds for granting Petitioner's § 2255 motion that were not previously raised "are the fault of counsel."  (Petitioner's Motion ("Pet. Motion") at 4)  For the reasons set forth below, Petitioner's application will be denied.

### I.

Petitioner Arthur D'Amario was convicted of one count of threatening a federal judge in violation of 18 U.S.C. § 115(a)(1)(B) after a jury trial before this Court.  The case arose out of Petitioner's frustration over sentencing calculations in connection with his earlier state and federal gun convictions.

While on probation for a prior state felony conviction in 1999, Petitioner was found in possession of a handgun and ammunition.  As a result, Petitioner was indicted on a felon-in-possession charge by a Rhode Island federal grand jury, found guilty at trial, and sentenced by District Court Judge Joseph DiClerico[1] to 18 months in federal prison.  Assistant United States Attorney Stephanie Browne represented the government in the federal case.

After the federal sentencing, Petitioner was sentenced by Rhode Island state court judge to 386 days in state prison for

---

[1]  Judge DiClerico, of the District of New Hampshire, sat by designation in the District of Rhode Island.

violating the terms of his state parole.  A judgment for time served was credited for the full 386 days and Petitioner was transferred to federal custody to serve his federal sentence. Although it appears that the state and federal sentences were intended to run concurrently, the federal Bureau of Prisons ("BOP") could not credit Petitioner with time spent in custody because that time had been already credited against his state parole violation sentence.  *See* 18 U.S.C. § 3585(b) ("A defendant shall be given credit toward a service of term of imprisonment for any time he has spent in official detention prior to the date sentence commences . . . that has not been credited against another sentence.")

While serving his felon-in-possession sentence at the Federal Correctional Institution at Fort Dix, New Jersey ("FCI Ft. Dix"), D'Amario mailed a letter to Edward Roy, Esq., his attorney in both the Rhode Island federal and state cases.  In the letter D'Amario expressed anger over the sentence credit computation:

> If they make me work one more day, and continue to fuck up my sentence computation, I will seek revenge on the day of my inevitable discharge against the conspirators. As soon as I get off the bus in Providence next month or next year, I will kill the judges who directed the state police to frame me with those nursery rhymes. I may charge after one and break his neck with my bare hands, or I might douse myself with gasoline and light the match next to a judge, or I may get a gun and shoot them all . . . .
>
> As I said, you must understand how sick I am of losing, and that I will not accept this latest conspiracy. The

co-conspirators are:

1. R.I. judges

2. Mass. Judges

3. [District Court Judge] DiClerico

4. The fat girl[2]

. . .

So the way we left it is that nobody had better push me or I'll explode. 'Leave me the fuck alone!' I said, or I'll kill somebody. I also said that I will not do this time and plan to beat the judges however I can even if it means hanging myself . . . .

But they have to let me out eventually. I've told them where we're at. If they don't drop these terror tactics immediately, I'm dedicated to killing R.I. judges when I'm out. I'll put the conspirators on the front page . . . . I dare anybody to push me. You can accept all they've done to me in this hoax case. I won't. If I'm in S.H.U. when this arrives, I expect you to call these [] and demand my release. They have no authority over me anymore. Arthur.

On December 4, 2001, a jury found Petitioner guilty of threatening to assault and murder District Court Judge DiClerico. Petitioner was represented by Assistant Federal Public Defenders Lori M. Koch, Esq., and Chris O'Malley, Esq., at trial.

Ms. Koch was Petitioner's counsel at sentencing.  In an attempt to compensate for the sentence credit computation in the earlier gun possession sentences,[3] this Court granted Petitioner

---

[2]  The government presented evidence at trial that "fat girl" was a reference to A.U.S.A. Browne.

[3]  The information before the Court indicated that the state and federal sentences were intended to run concurrently but could not because of 18 U.S.C. § 3585(b).

4

a downward departure, sentencing him to 27 months' imprisonment. However, the Third Circuit vacated the sentence and remanded to this Court for re-sentencing within the applicable Sentencing Guidelines range.  *See U.S. v. D'Amario*, 350 F.3d 348 (3d Cir. 2003).  Petitioner, represented by different counsel, was re-sentenced on April 22, 2004, to 30 months' imprisonment.[4]

Although Petitioner timely filed an appeal, he later withdrew his appeal for reasons not apparent in the record.  He filed this Section 2255 motion on May 10, 2004.

## II.

Section 2255 provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (2000); *see also* Rules Governing § 2255 Cases, Rule 1(1).  Thus, Petitioner is entitled to relief only if he can establish that he is in custody in violation of federal law or the Constitution.

---

[4] The April 22, 2004 re-sentencing was Petitioner's second re-sentencing.  Petitioner was initially re-sentenced on July 12, 2002 to correct an uncontested claim of error.  Ms. Koch represented Petitioner in the July, 2002 re-sentencing.

A district court is given discretion in determining whether to hold an evidentiary hearing on a habeas petition under Section 2255. *See Gov't of the V.I. v. Forte,* 865 F.2d 59, 62 (3d Cir. 1989). In exercising that discretion, the court must first determine whether the petitioner's claims, if proven, would entitle him to relief, and then consider whether an evidentiary hearing is needed to determine the truth of the allegations. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 291 (3d Cir. 1991). Accordingly, a district court may summarily dismiss a motion brought under Section 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'" *U.S. v. Nahodil,* 36 F.3d 323, 326 (3d Cir. 1994) (quoting *U.S. v. Day,* 969 F.2d 39, 41-42 (3d Cir. 1992)); *Forte,* 865 F.2d at 62.

Petitioner asserts that he was provided ineffective assistance of counsel in violation of his Sixth Amendment rights. He maintains that his counsel: (1) did not object to alleged perjured testimony at trial and failed to prevent introduction of evidence protected by attorney – client and psychotherapist – patient privilege; (2) prevented Petitioner from testifying on his own behalf and erroneously informed the Court that he waived his right to testify; (3) failed to impeach government witnesses during cross-examination; (4) failed to pursue discovery and interview several potential witnesses; (5) failed to present evidence at sentencing that would have led to a lighter sentence;

6

(6) did not assert defenses of duress and mistake / ignorance of law at trial or sentencing; and (7) failed to protest the government delaying Petitioner's indictment for eleven months.

In addition to ineffective assistance of counsel, Petitioner asserts that he is entitled to relief because (1) his conviction violates the Double Jeopardy Clause of the Fifth Amendment; (2) he was denied his right to self-representation; (3) the government destroyed and / or failed to produce evidence; (4) the Court improperly made factual determinations at sentencing without a hearing or jury determination; and (5) the communication element of 18 U.S.C. § 115(a)(1)(B) was not proven. Petitioner further asserts that "better counsel would have raised all grounds in 2001." (Pet. Motion at 5)

For the reasons outlined below, the Court finds that the evidence in the record conclusively demonstrates that Petitioner is not entitled to the relief sought. Accordingly, Petitioner's application will be denied without an evidentiary hearing.[5]

### III.

The Supreme Court has long recognized that the Sixth Amendment right to counsel exists in order to protect a defendant's fundamental right to a fair trial. *Strickland v.*

---

[5] Petitioner has also filed a motion for summary judgment re-asserting a subset of his ineffective assistance of counsel arguments as they relate to the testimony of Dr. Olnes. The government included an opposition to summary judgment in their answer to the § 2255 motion. Because the Court will deny the § 2255 motion, we will dismiss the summary judgment motion as moot.

*Washington*, 466 U.S. 668, 684-85 (1984).  This right to counsel includes within it the right to *effective assistance* of counsel. *Id.* at 686; *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). In *Strickland*, the Court held that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

A convicted defendant seeking to have his conviction or sentence vacated due to the incompetence of counsel must show that his counsel's performance was deficient and that he was prejudiced by the deficiency.  *Id.* at 687.  The first prong of this test requires a habeas petitioner to demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," such that counsel's representation fell below an objective standard of reasonableness.  *Id.*  Second, the petitioner must show that but for counsel's errors, there is a reasonable probability that the result of the trial would have been different.  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

A court reviewing a habeas petitioner's claim of ineffective assistance of counsel need not determine whether counsel's

8

performance fell below an objective standard of reasonableness
before addressing whether the defendant was prejudiced by
counsel's errors.  *Strickland*, 466 U.S. at 697.  "If it is easier
to dispose of an ineffectiveness claim on the ground of lack of
sufficient prejudice, which we expect will often be so, that
course should be followed."  *Id.*

### A.

Petitioner asserts that counsel erred by not preventing
Edward Roy, Esq., and Dr. Andrew Olnes from testifying at trial.
He claims that counsel failed to exclude irrelevant, prejudicial
and "illegally obtained" evidence, and failed to object to
alleged perjury from both witnesses.[6]

Edward Roy, Esq., was the first witness called by the
government at trial.  He testified about his representation of
Petitioner, the circumstances surrounding Petitioner's threat
letter, and the actions Roy took in reporting the letter to
various authorities.  He also testified about another letter
Petitioner sent him which discussed seeking restoration of his
gun rights upon his release from prison specifically so

---

[6] Petitioner further explains that these failures effectively prevented
him from exercising his "right" to a bench trial on the theory that had he
known the evidence would be admitted, he would have waived his right to a
jury.  However, criminal defendants do not have a constitutional right to a
bench trial.  *Singer v. U.S.*, 380 U.S. 24 (1965).  Moreover, Petitioner does
not allege and the Court cannot conclude from the record that a bench trial
would have, with any reasonable probability, altered the verdict.

9

Petitioner could keep District Court Judge Ronald Lagueux[7] and
A.U.S.A. Browne "worried."

Dr. Andrew Olnes was a BOP employee at the Federal Medical
Center in Rochester, Minnesota, where he came into contact with
Petitioner during July and August, 2000.  Dr. Olnes testified
that Petitioner told him during a meeting[8] that he was very angry
with the judicial system and anticipated having to defend himself
against members of the legal system who might come after him once
he was released.  In particular, Dr. Olnes testified that
Petitioner very angrily said that he might have to purchase a
weapon to protect himself.

Petitioner argues that unidentified documents should have
been suppressed because Roy "maliciously opened up his entire
file and let prosecutors browse through it" in violation of
attorney-client privilege. (Pet. Motion at 4)  Petitioner further
asserts that Roy lied when he testified that he was unable to
contact Petitioner before disclosing the threat letter to the
FBI.

In written briefs, Petitioner's trial counsel skillfully
sought to suppress the threat letter and two additional letters

---

[7]  Judge Lagueux presided over a civil case involving Petitioner.  *See*
*D'Amario v. Russo*, 750 F. Supp. 560 (D.R.I. 1990).

[8]  The "meeting" was actually a risk assessment before a panel charged
with determining Petitioner's threat to the community.  The Court did not
admit evidence related to Petitioner's psychiatric treatment.  Dr. Olnes
testified as a fact witness only.

Petitioner wrote to Roy on several grounds, including attorney –
client privilege.  Indeed, Petitioner's counsel sought to exclude
Roy's testimony altogether.  Although the Court ruled in the
government's favor,[9] trial counsel's performance was far from
unreasonable.  An adverse decision alone does not lead the Court
to conclude that counsel acted unreasonably.  *See Lockhart v.
Fretwell,* 506 U.S. 364, 369 (1993) ("an [ineffective assistance
of counsel] analysis focusing solely on mere outcome
determination, without attention to whether the result of the
proceeding was fundamentally unfair or unreliable, is
defective."); *Strickland*, 466 U.S. at 689 ("A fair assessment of
attorney performance requires that every effort be made to
eliminate the distorting effects of hindsight, to reconstruct the
circumstances of counsel's challenged conduct, and to evaluate
the conduct from counsel's perspective at the time.")

Trial counsel also sought to suppress Dr. Olnes' testimony
on the ground of psychotherapist – patient privilege as well as
other grounds.  The Court held an evidentiary hearing on the
matter, where Petitioner's counsel capably advocated for
excluding Dr. Olnes' testimony and carefully cross-examined Dr.
Olnes.  Although the Court ultimately concluded that the
privilege did not apply, Petitioner's counsel performed well

---

[9]  *See generally In re Grand Jury Proceeding Impounded*, 241 F.3d 308,
316-17 (3d Cir. 2001)("crime-fraud exception" to attorney – client privilege
allows disclosure of future illegal activities).

above the constitutional minimum.

Nor was counsel ineffective with regard to either witness's alleged perjury.  Petitioner points to no evidence contradicting any of their testimony.  Nor does Petitioner assert that counsel knew or even suspected the witnesses of lying at trial.  Counsel was not ineffective for failing to object to testimony for which there was no factual basis to object.

Moreover, Dr. Olnes's challenged testimony was not material to the case.  Petitioner alleges that Dr. Olnes lied at an evidentiary hearing held outside the presence of the jury when he testified that he could not remember the other five people who were present for the August 2, 2000, risk assessment.  The five individuals' identities were not necessary to the Court's holding that no psychotherapist - patient privilege existed.  The fact that third parties were present, regardless of their identities, contributed to the Court's decision that Petitioner did not have an expectation of privacy at the risk assessment.[10]  Thus, Petitioner's argument with regard to Dr. Olnes' testimony fails for the additional reason that he cannot establish prejudice. The Court decision to admit Dr. Olnes' testimony would not have been different if Dr. Olnes identified by name each person present at the risk assessment.

---

[10]  Dr. Olnes testified that other psychiatrists or psychologists not directly involved with a patient's care sit on the risk assessment panel.  He also testified that other people, including social workers and other mental health staff, are present for the panel's questioning.

**B.**

Petitioner claims trial counsel prevented him from exercising his constitutional right to testify in his own defense.[11]  Specifically, Petitioner alleges that "I always insisted that I be allowed to take the witness stand.  Counsel would not prepare with me and strived to avoid me during recesses. . . . they misrepresented to the Court that I wanted to waive my right, when in truth, I could not assert it due to their incompetence."  (Pet. Motion at 5)  Petitioner further explains that "[i]t was malpractice to not let Petitioner rebut Olnes, or to explain how he was tortured at Fort Dix and sought refuge in the Hole."[12]  (Pet. Mem. at 5)

When a petitioner collaterally attacks his sentence  "'[a] barebones assertion by a defendant, albeit made under oath . . . is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him . . . Some greater particularity is necessary, . . . such as an affidavit from the lawyer who allegedly forbade his client to testify.'"  *Lloyd v. U.S.*, No. 03-813, 2005 WL 2009890 at *13 (D.N.J. Aug. 16, 2005) (quoting *Underwood v. Clark*, 939 F.2d 473,

---

[11]  *See generally Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987) (a criminal defendant's right to testify is inherent in the Fifth, Sixth, and Fourteenth Amendments).

[12]  Apparently Petitioner's assignment to dish duty at 4 a.m. while incarcerated at Fort Dix caused him to lose sleep.  Petitioner "sought refuge in the Hole" (i.e. intentionally misbehaved) presumably because he would not be required to wash dishes while on punishment in the Segregated Housing Unit. (*See* Pet. Motion at 5C)

475-76 (7th Cir. 1991) (Posner, J.)); *accord. U.S. v. Aikens,* 358
F. Supp. 2d 433, 436 (E.D. Pa. 2005) (quoting *Underwood*); *U.S. v.
Smith*, 235 F. Supp. 2d 418, 425 (E.D. Pa. 2002) (quoting
*Underwood*).

Petitioner provides no documentation nor does the Court find
any evidence in the record that Petitioner was actually *prevented*
from testifying at his trial.  Petitioner explains that "Counsel
foolishly refused to let me testify and rebut Olnes, insisting
that no one would believe him."  (Pet. Motion at 5A)  There is no
evidence to suggest that counsel did anything more than advise
Petitioner not to testify.  Such advice was a reasonable
strategic decision.  *See Frederick v. Kyler*, 100 Fed. Appx. 872,
874 (3d Cir. 2004)("If [Petitioner's] attorney merely advised him
not to testify, that tactical decision certainly would not have
fallen below *Strickland*'s standard of objective
reasonableness."); *Smith*, 235 F. Supp. 2d at 426 ("[Petitioner]
has failed to overcome the presumption that counsel's advice that
[Petitioner] not take the stand was 'sound trial
strategy.'")(quoting *Strickland*).  This alone is sufficient to
deny relief.

However, even accepting *arguendo* Petitioner's bald
allegation that he was prevented from testifying, Petitioner has
not demonstrated that he was prejudiced by trial counsel's error.
Petitioner claims his testimony would have "rebutted" Dr. Olnes's

14

testimony but does not disclose the substance of his proposed
testimony.   *See Aikens*, 358 F. Supp. 2d at 436-37 ("Petitioner's
assertion that his testimony would have contradicted the
testimony of the cooperating witnesses is insufficient to satisfy
*Strickland's* prejudice element.").   The scope of Dr. Olnes'
testimony was limited to his observations of Petitioner during
his incarceration at the Federal Medical Center in Rochester
before he was transferred to FCI Ft. Dix.   Even if the Court
assumes that Petitioner would have effectively and completely
discredited Dr. Olnes, it is not reasonably probable that the
outcome of the trial would have been different.   While the
government presented Dr. Olnes's testimony to help establish
Petitioner's intent to retaliate, the jury could have found the
requisite state of mind solely based on the other evidence
presented at trial, including the testimony of Edward Roy,
A.U.S.A. Browne,[13] and the threat letter itself.


### c.

Petitioner also attacks counsel's cross examination of Roy
and Dr. Olnes claiming that counsel failed to impeach them.
Petitioner levels conclusory and unsubstantiated accusations that

---

[13]   Browne testified about several other "nasty" letters she received
directly from Petitioner, including a letter (admitted as Government Exhibit
17) which sufficiently concerned her that she forwarded it to the U.S.
Marshals and case agents for investigation.

both Roy and Olnes had motives to lie which originated, at least in part, from personal animus toward Petitioner.

Considering the totality of evidence against Petitioner as well as the very able cross-examinations conducted by his counsel,[14] we cannot say that failing to impeach Roy and Olnes with their alleged motives to lie amounted to ineffective assistance of counsel.  In neither case does the Court find a reasonable probability that the verdict would have been different if trial counsel had taken the actions Petitioner wished them to take.  See *U.S. v. Harris*, 394 F.3d 543, 557 (7th Cir. 2005) (failure to impeach a witness was not ineffective assistance of counsel where totality of evidence and counsel's performance on cross-examination precluded a finding of prejudice); *see also U.S. v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992) (counsel was not ineffective despite defendant's claim that lawyer had failed to thoroughly impeach prosecution witnesses because decisions as to nature and extent of cross-examination are strategic); *U.S. v. Miller*, 907 F.2d 994, 1002 (10th Cir. 1990) (prejudice was not established where cross examination would not affect the substance of the witness's testimony but could only have affected credibility).

---

[14] Ms. Koch cross-examined both witnesses at trial and also cross-examined Olnes at an evidentiary hearing.

16

**D.**

> Petitioner charges:
>
> Counsel failed to pursue discovery and interview witnesses such as Judge DiClerico, Barbara L. Margolis, Joe Pezza and Joe Rodio, various Fort Dix inmates and staff members, various FMC Rochester inmates and staff members.  Counsel neglected the Fort Dix records, FMC records, the witness statements held by Minnesota state boards, FBI records, Ed Roy's notes and files, U.S. Marshall's reports and analyses, and my July 2001 letter from FDC to AUSA Browne about Dr. Olnes.

(Pet. Motion at 5A)

The Court is left to speculate as to the content of these documents and the proposed witness' testimony as Petitioner makes no attempt to explain how this evidence is relevant or material to his case.  Prejudice resulting from ineffective assistance of counsel cannot be based on mere speculation as to what witnesses might have said.  *Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001); *Lewis v. Mazurkiewicz*, 915 F.2d 106, 113 (3d Cir. 1990) ("As *Strickland* made clear, trial counsel was not bound by an inflexible constitutional command to interview every possible witness. ").  Thus, the Court cannot conclude that Petitioner was prejudiced by counsel's failure to investigate or call these individuals as witnesses because he has failed to provide any supporting documentation, in the form of affidavits or otherwise, detailing what the documents or witnesses would have said.

17

**E.**

Counsel purportedly "bungled sentencing" by not submitting evidence in support of a "Lesser Harms" downward departure under § 5K2.11 of the Sentencing Guidelines.  Under that provision, "a reduced sentence may be appropriate" if the defendant committed a crime "in order to avoid a perceived greater harm" and "the circumstances significantly diminish society's interest in punishing the conduct."  U.S. Sentencing Guidelines Manual § 5K2.11 (1998).[15]  Petitioner fails to identify the "greater harm" he perceived or the evidence he thinks his counsel should have put forth.  The Court finds no suggestion in the record that § 5K2.11 would have been applicable to Petitioner.  Failure to seek an inapplicable downward departure constitutes neither unreasonable performance by counsel nor prejudice.  *Vega v. U.S.,* 269 F. Supp. 2d 528, 536 (D.N.J. 2003).

**F.**

Petitioner claims his counsel erred by not raising the defenses of duress and mistake of law.  He maintains that "prolonged sleep deprivation" placed him under duress which should have been "presented at trial in avoidance of criminal liability" or alternatively, could have been used at sentencing

---

[15]  The 1998 version of the Guidelines were used at sentencing.

18

to reduce his sentence.[16] (Pet. Motion at 5B; Pet. Mem. at 2)
Petitioner further asserts that he believed the letter in which
he threatened Judge DiClerico was privileged because it was a
communication to his lawyer.  Both defenses are meritless.

The defense of duress will fail "if there was a reasonable,
legal alternative to violating the law, 'a chance both to refuse
to do the criminal act and also to avoid the threatened harm.'"
*U.S. v. Bailey*, 444 U.S. 394, 410 (1980).  To assert a defense of
duress at his trial, Petitioner would have had to make a prima
facie showing of "(1) an immediate threat of death or serious
bodily injury; (2) a well-grounded fear that the threat will be
carried out; and (3) no reasonable opportunity to escape the
threatened harm." *U.S. v. Naovasaisri*, No. 04-2540, 2005 U.S.
App. LEXIS 22263 at *10 (3d Cir. Oct. 14, 2005)(quoting *U.S. v.
Miller*, 59 F.3d 417, 422 (3d. Cir. 1995)).

Sleep deprivation simply does not amount to an immediate
threat of death or serious bodily injury.  As a matter of law,
Petitioner was not entitled to present a duress defense to the
jury.  *Id.*  Nor would duress have helped him at sentencing.  *See*
*U.S. v. Minutoli*, 374 F.3d 236, 244 (3d Cir. 2004) (duress
departure under the Guidelines is "reserved for cases in which a
threat of physical injury, substantial damage to property or

---

[16]  Petitioner specifically complains that his counsel should have
presented a sleep disorder expert at sentencing to testify about Petitioner's
"chronic disorder."

similar injury resulting from the unlawful action of a third party caused the defendant to commit the offense, but where the circumstances did not amount to a complete duress defense.")

Petitioner's asserted mistake of law defense is also incognizable. "The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." *Cheek v. U.S.*, 498 U.S. 192, 199 (1991). Moreover, Petitioner does not argue that he mistakenly believed that writing the threat letter was legal. He argues that he believed the letter was shielded from disclosure by the attorney – client privilege. Essentially, he mistakenly thought that the attorney – client privilege (and Roy's attendant ethical duty of confidentiality) would prevent discovery of the threat. Such an argument is not a legally feasible defense. Failing to assert meritless defenses was not objectively unreasonable performance by counsel and did not prejudice Petitioner. *U.S. v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

### G.

Petitioner alleges that counsel failed to protect his "right to full jail credit" by not protesting the prosecutor's intentional and prejudicial "delaying [of] the indictment." (Pet. Motion at 5C)

Ms. Koch sought a downward departure to compensate Petitioner for his time served. She fully briefed the Court on

the issue and Petitioner was granted a downward departure.
Therefore the Court holds that Ms. Koch's performance was more
than adequate to satisfy constitutional standards.  The fact that
the sentence was later vacated on appeal does not render her
performance deficient.

Further, although Petitioner asserts that counsel's failure
to object to the eleven month pre-indictment delay "cost us a key
witness" the Court cannot find that counsel's performance
prejudiced defendant.  The Court will not speculate and
Petitioner does not explain what "inmate Hiatt of Fort Dix" would
have said before he was deported to India in autumn 2000.  As
stated above, prejudice resulting from ineffective assistance of
counsel cannot be based on mere speculation as to what witnesses
might have said.  *Duncan*, 256 F.3d at 201-02 (3d Cir. 2001).

## IV.

Petitioner identifies five other grounds for relief: (1) his
conviction violates the Double Jeopardy Clause of the Fifth
Amendment; (2) he was denied the right to self-representation;
(3) the government destroyed and / or failed to produce evidence;
(4) the Court improperly made factual determinations at
sentencing without a hearing or jury determination; and (5) the
communication element of 18 U.S.C. § 115(a)(1)(B) was not proven.
He asserts these grounds were not previously raised on direct

appeal because his counsel was ineffective.

A defendant procedurally defaults on any claims he may have in a § 2255 motion by failing to raise objections during trial or failing to appeal. *U.S. v. Frady*, 456 U.S. 152, 167 (1982). Claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice. *Id.* at 167-68; *see also U.S. v. Pelullo,* 399 F.3d 197, 220-21 (3d Cir. 2005) ("the proper standard of review for collateral attacks on trial errors . . . is the 'cause and actual prejudice standard'")(quoting *Frady*); *U.S. v. Essig*, 10 F.3d 968, 979 (3d Cir. 1993) (cause and prejudice standard applies to collateral attacks on sentencing errors).[17]  Because Petitioner inexplicably withdrew his appeal, he must establish both cause and prejudice before this Court will consider the additional grounds for relief.

"A successful showing of ineffective assistance of counsel may satisfy the 'cause' prong of a procedural default inquiry . . . if the ineffectiveness rises to the level of constitutional deprivation under *Strickland*." *U.S. v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000); *see also Edwards v. Carpenter*, 529 U.S. 446 (2000) (ineffective assistance of counsel may satisfy the cause

---

[17] Claims of ineffective assistance of counsel are not subject to the procedural default rule. *Massaro v. U.S.*, 538 U.S. 500 (2003).  However, with respect to the remaining grounds for relief, Petitioner does not directly attack his counsel's performance.  Instead, Petitioner argues that ineffective counsel is sufficient cause to excuse his procedural default.

prong of a § 2254 procedural default inquiry).  However, if Petitioner's challenges to the alleged errors at trial and sentencing are not meritorious, failure to raise those claims on direct appeal is not ineffective assistance of counsel and cannot constitute "cause" for the procedural default.  *See Mannino*, 212 F.3d at 840.

The prejudice prong of the procedural default inquiry is satisfied by showing "reasonable probability that the result of the trial would have been different."  *Strickler v. Greene*, 527 U.S. 263, 289 (1999); *see also United States v. Jenkins,* 333 F.3d 151, 155 (3d Cir. 2003)(Petitioner failed to demonstrate actual prejudice where "overwhelming evidence" established that Petitioner had possessed at least 50 kilograms of marijuana); *Whitney v. Horn*, 280 F.3d 240, 258 (3d Cir. 2002) (where Petitioner asserts ineffective assistance of counsel as the reason for procedural default, prejudice is established by showing 'a reasonable probability that the result would have been different but for the professional errors.').

Petitioner has failed to establish cause and / or prejudice with respect to each of the alleged errors.  Therefore his procedural default is not excused and Petitioner's motion must be dismissed.

**A.**

Petitioner maintains that BOP "revoked" credit against his felon-in-possession sentence as punishment for threatening Judge DiClerico in violation of the Double Jeopardy Clause of the Fifth Amendment.  *See* U.S. Const. amend. V ("nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb").  The Court assumes Petitioner argues that the credit "revocation" and his subsequent sentence for threatening Judge DiClerico is double punishment for the same offense.

However, the record is clear that BOP decided against granting Petitioner credit on his felon-in-possession sentence before Petitioner wrote the letter in which he threatened Judge DiClerico.  Indeed, it appears that BOP's denial of credit motivated Petitioner to write the letter.  Even assuming *arguendo* that BOP's decision (which was mandated by 18 U.S.C. § 3585(b)) could be considered "punishment" for Double Jeopardy purposes, as a matter of logic the decision could not have been punishment for an offense that had not yet occurred.  Thus, the only punishment Petitioner received for threatening Judge DiClerico was the sentence this Court imposed.

Petitioner committed three separate offenses (state probation violation, federal felon-in-possession, and threatening a federal judge); received three separate sentences (386 days, 18 months, and 30 months respectively); and received time-served

credit against one of those sentences in accordance with 18 U.S.C. § 3585(b). There was no Double Jeopardy violation. *See U.S. v. Chorin*, 322 F.3d 274, 280 (3d Cir. 2003)(imposing two consecutive sentences for two separate offenses is not a Double Jeopardy violation). Failure to raise this meritless argument is not ineffective assistance of counsel. Therefore no cause exists to excuse Petitioner's failure to raise this argument on direct appeal.

### B.

Petitioner asserts that he was denied his Sixth Amendment right to self – representation because "the pretrial release order of home confinement in the desert, and no contact allowed with potential witnesses, prevented me from representing myself and is the only reason I did not." (Pet. Motion at 4) Petitioner did not request to represent himself at trial or at his sentencings.

"[B]ecause 'a person cannot secure the right to proceed pro se without sacrificing the right to counsel,' the Third Circuit requires that the defendant only be permitted to represent himself if he asserts the right to proceed pro se affirmatively, unequivocally [and] voluntarily." *U.S. v. Harris*, No. 03-354, 2003 U.S. Dist. LEXIS 26314 at *12 (D.N.J. Aug. 14, 2003) (quoting *U.S. v. Peppers*, 302 F.3d 120, 129 (3d Cir. 2002)).

"The Court must indulge every reasonable presumption against waiver of the right to counsel." *Id.* at *13 (quoting *U.S. v. Stubbs*, 281 F.3d 109, 116-17 (3d Cir. 2002)).

Therefore we must conclude, in the absence of evidence to the contrary, that Petitioner waived his right to represent himself by failing to affirmatively request to represent himself.[18]  There is no evidence in the record nor does Petitioner assert that he asked the Court or his counsel to proceed pro se.  Counsel were not ineffective for continuing to represent Petitioner when they had no reason to know that Petitioner wished to proceed pro se. *See Walker v. Vaughn*, No. 92-1616, 1994 U.S. Dist. LEXIS 1600 at *18-19 (E.D. Pa. Feb. 16, 1994) (habeas petition denied where Petitioner asserted trial counsel denied him the right to represent himself but "Petitioner [had] not shown that he even requested self-representation.") No cause exists to excuse Petitioner's procedural default.

---

[18]  Although Petitioner did instruct Ms. Koch to withdraw as his counsel just before his first re-sentencing, he asked the Court in a June 18, 2002, letter for replacement counsel.  He described his unsuccessful efforts to obtain enough money to hire the lawyer of his choice and he asked the Court to appoint new counsel.  He did not ask to represent himself.

Moreover, while the Court refused to allow Ms. Koch to withdraw at that time, the Court allowed Petitioner to "file on his behalf anything he thinks is relevant" and allowed him to speak in Court. (June 27, 2002, letter from the Court to Ms. Koch)  On July 4, and July 7, 2002, Petitioner submitted his own letter briefs regarding re-sentencing.  Thus, even though the Court concludes that Petitioner waived his right to represent himself, Petitioner did in fact address the Court on his own behalf at his first re-sentencing.

**c.**

Petitioner identifies two documents that he asserts the government deliberately destroyed or suppressed in violation of his Due Process rights.  First, Petitioner alleges that A.U.S.A. Browne hid or destroyed a July, 2001, letter Petitioner sent to her which stated that Dr. Olnes was a "liar" and "falsified" Petitioner's records.  Second, Petitioner alleges that the government never identified or produced "a USMS assessment that the case was not worthy of criminal prosecution."  (Pet. Motion at 5B)[19]  He does not explain how these documents are favorable to him or how they are material to the case.  *Cf.  U.S. v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005) ("To establish a due process violation under Brady, a defendant must show that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment.")  Nor does Petitioner provide any supporting documentation for his *Brady* claims.  *See U.S. v. Santos-Cruz*, No. 03-4286, 2003 U.S. Dist. LEXIS 20183 at *24 (E.D. Pa. Nov. 6, 2003) ("Movant's assertions that exculpatory evidence was withheld by the Government amount to nothing more than bald assertions and conclusory allegations that

---

[19]  Petitioner also asserts that Roy "sanitized" Petitioner's BOP medical file by "removing and destroying the handwritten notes of the other physicians and destroying their typewritten reports of the two risks of 8/2/00 and 4/10/01." (Pet. Motion at 5B)  Roy did not represent Petitioner at any stage of the case addressed in this § 2255 motion.  As such, the Court cannot review asserted errors that arose out of Roy's actions.

do not even warrant an evidentiary hearing.") (citing *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987)); *contrast U.S. v. Zomber*, 379 F. Supp. 2d 770, 772 n.5 (E.D. Pa. 2005)("'Where the submission of written affidavits raises genuine issues of material fact and where, as here, the *Brady* claims . . . are neither frivolous nor palpably incredible, an evidentiary hearing should be conducted.'") (quoting *U.S. v. Dansker*, 565 F.2d 1262, 1264 (3d Cir. 1977)).

Petitioner authored the letter he claims the government suppressed.  The government was not obligated to produce Petitioner's own letter to him or introduce the letter into evidence at trial.[20]  *See Santos-Cruz*, 2003 U.S. Dist. LEXIS 20183 at *24 ("a true Brady violation requires that the prosecution suppress evidence. In this case, there is no indication that the Government withheld any evidence from the Defendant.")  Counsel's failure to raise this meritless argument is not ineffective assistance of counsel.

Even if the government should have produced the documents, Petitioner does not assert, and the Court cannot conclude that producing the documents would have refuted the wealth of evidence presented against him by the prosecution and changed the outcome of the trial.  *See Morelli v. U.S.,* 285 F. Supp. 2d 454, 460

---

[20]  Petitioner seems to imply that his letter contained material that could be used to impeach Dr. Olnes.  For the reasons explained above, the Court cannot conclude that even completely impeaching Dr. Olnes would have altered the jury's verdict.

28

(D.N.J. 2003)("favorable evidence is 'material' if it 'could
reasonably be taken to put the whole case in such a different
light as to undermine confidence in the verdict.'") (quoting
*Kyles v. Whitley*, 514 U.S. 419, 435 (1995)). Accordingly,
Petitioner cannot establish either cause or actual prejudice and
his procedural default on the *Brady* claim cannot be excused.

## D.

Petitioner claims that his Sixth Amendment rights were
violated because there was no jury determination of two factual
issues at sentencing:[21] whether (1) he engaged in little or no
deliberation when making the threat against Judge DiClerico (if
so, Petitioner would have been eligible for a downward
adjustment) and (2) his offense of conviction was motivated by
Judge DiClerico's official status (if not, the Official Victim
enhancement under Guidelines Section 3A1.2(a) would not apply).
Petitioner asserts that he would have presented evidence that
sleep deprivation prevented him from "giving anything more than
little or no deliberation to [the threat letter]" and that his
intended victim was Roy, not Judge DiClerico. (Pet. Motion at 5B)

---

[21]    *See Blakely v. Washington*, 542 U.S. 296 (2004) (The Sixth Amendment
requires that a jury find beyond a reasonable doubt all facts, except prior
conviction, that increase the penalty for a crime beyond the prescribed
statutory maximum); *see also U.S. v. Booker*, 160 L. Ed. 2d 621 (2005)
(applying *Blakely* to the Sentencing Guidelines).  *Booker* was decided after the
instant § 2255 motion was fully briefed by the parties.

Petitioner's conviction became final on direct review before *Blakely* and *Booker* were decided.  The rule announced in *Blakely / Booker* "is a new rule of criminal procedure that is not retroactively applicable to cases on collateral review."  *U.S. v. Armstrong*, No. 05-2333, 2005 U.S. App. LEXIS 22124 at *3 (3d Cir. Oct. 13, 2005); *see also Lloyd v. U.S.*, 407 F.3d 608, 614 (3d Cir. 2005) ("*Booker* does not apply retroactively to cases on collateral review.").

Because *Booker* does not apply retroactively, Petitioner's claim fails on the merits and is procedurally barred.  *See U.S. v. Hoffner,* No. 00-456-01-10, 2005 U.S. Dist. LEXIS 28133 at *9-13 (E.D. Pa. Nov. 16, 2005)(Defendants were not improperly sentenced because *Booker* did not apply retroactively to § 2255 motion, and their counsel's failure to raise an objection to their sentences that was contrary to established precedent at the time was not objectively unreasonable); *see also Forte,* 865 F.2d at 62 ("Only in a rare case can an attorney's performance be considered unreasonable under prevailing professional standards when she does not make an objection which could not be sustained on the basis of the existing law as there is no general duty on the part of defense counsel to anticipate changes in the law.").

**E.**

Lastly, Petitioner asserts that because his threatening

letter was addressed to Roy, and not Judge DiClerico, the communication element of 18 U.S.C. § 115 (a)(1)(B) was not proven.  Direct communication to the person threatened is not required for a conviction under the statute.  *U.S. v. Martin*, 163 F.3d 1212, 1216 (10th Cir. 1998); *U.S. v. Snelengerger*, 24 F.3d 799, 803 (6th Cir. 1994).  Failure to assert a legally unsupportable argument is not ineffective assistance of counsel and is not cause for excusing Petitioner's default.


## V.

For the reasons set forth above, this Court will deny Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.  The Court will issue an appropriate order.


Date:    12/7/05

                                    s/Joseph E. Irenas
                                    JOSEPH E. IRENAS, S.U.S.D.J.


31